JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2022 JUL -8 AM 11: 44

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

MABEL ARREDONDO,

Plaintiff,

v.

MATRIX WARRANTY SOLUTIONS, INC.
d/b/a ELEMENT PROTECTION PLANS a
a Nevada Corporation, and VEHICLE
ACTIVATION CENTER

Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

EP22CV0235

## COMPLAINT:

### Preliminary Statement

1.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff MABEL ARREDONDO ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant VEHICLE ACTIVATION CENTER ("VAC") commissioned a series of automated telephone calls to originate new customers by calling cellular telephone numbers listed on the National Do-Not-Call Registry, like Plaintiff's number, which is prohibited by the TCPA. The calls were made on behalf of Defendant MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION PLANS ("Matrix") and at the supervision, direction, and control of Defendant Matrix.

1

3.     Plaintiff never consented to receive any of these calls, which were placed to her for telemarketing purposes.

**Parties**

4.     The Plaintiff is MABEL ARREDONDO ("Plaintiff"), a natural person, resident of the Western District of Texas, and was the individual who received the alleged phone calls in this case on her private mobile telephone, and was present in Texas for all calls, in this case in El Paso County, Texas.

5.     Defendant MATRIX WARRANTY SOLUTIONS, INC. d/b/a ELEMENT PROTECTION PLANS ("Matrix") is a Corporation existing under the laws of Nevada with its principal address at 3100 McKinnon Street, Suite 420, Dallas, TX 75201 and can be served via registered agent United Corporate Services, Inc. at 815 Brazos Street, Suite 500 Austin, TX 78701. Defendant markets and sells, *inter alia*, Vehicle Service Contracts ("VSC's") to consumers in Texas and engages in telemarketing into this district, as it did with the Plaintiff.

6.     Defendant VEHICLE ACTIVATION CENTER ("VAC") is an unknown business entity whose true corporate identity will be revealed during discovery and is listed in the Vehicle Service Contract as the seller with an address of 135 State College Boulevard, Suite 200, Brea, California 92821.

7.   Defendants Matrix and VAC are hereinafter collectively referred together as "Defendants".

**Jurisdiction & Venue**

8.     This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 556 U.S. 368, 372 (2012).

9.      This Court has personal jurisdiction over the Defendants because they have repeatedly placed calls to Texas residents with Texas telephone area codes, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

10.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendants conduct business in, and a substantial part of the events giving rise to Plaintiff's claims occurred in El Paso County, Texas, and Plaintiff was physically present and residing in Texas for all calls, in this case in El Paso County, Texas. Defendants conduct business in this judicial district by calling Texas consumers.

## Background
## The Telephone Consumer Protection Act

11.     The Telephone Consumer Protection Act 10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency

Congress vested with authority to issue regulations implementing the TCPA, such calls are

prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order,

18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded

telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it

ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the consumer
> designates.[] In addition, the written agreement must be obtained "without
> requiring, directly or indirectly, that the agreement be executed as a condition of
> purchasing any good or service.[]" In the Matter of Rules & Regulations
> Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844
> (2012) (footnotes omitted).

<u>The National Do-Not-Call Registry</u>

17.     The National Do Not Call Registry allows consumers to register their telephone numbers

and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

20. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

<h3 align="center"><u>Texas Business and Commerce Code</u></h3>

21. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas. Tx. Bus. & Com. Code § 302.101.

22. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation and reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.  § 302.302(a), 302.302(d).

23. Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

24.     The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

## Factual Allegations

25.     Plaintiff's personal cellular telephone number (915) 999-8219 has been successfully

registered on the National Do-Not-Call Registry since March 2022.

26.     Defendants sell vehicle service contracts ("VSC's") to consumers.

27.     Defendants use telemarketing to promote their goods and services.

28.     At all times material hereto, Plaintiff was the subscriber of the telephone number (915)

999-8219 and paid her cell phone bill from her personal bank account.

29.     The Plaintiff has received at least four (4) calls within seven days to her cell phone

number (915) 999-8219 from Defendant VAC at the control and authorization of Defendant

Matrix, without her prior express written consent and not related to any emergency purpose,

selling VSC's on behalf of Defendant Matrix. *Please see attached "Exhibit A"*.

30.     Plaintiff received these calls from spoofed caller ID's that were initiated using an

automatic telephone dialing system ("ATDS") that started with a prerecorded voice message.

The calls were made on behalf of Defendant Matrix. The calls generally had a delay of 3-4

seconds of dead air before an audible tone connected Plaintiff to a representative, indicating the

calls were initiated using an ATDS.

31.     Defendant Matrix is the administrator of the VSC and has complete control over the

sellers they hire to solicit their VSC's. Defendant Matrix knowing and willfully authorizes them

to place illegal robocalls to millions of consumers *en masse* because it benefits Defendant Matrix

financially when consumers purchase their VSC's.

32.     Defendants offer VSC's saying they are part of an auto warranty relief program that will extend the consumers vehicle factory warranty.

33.     Every call Plaintiff received from Defendant VAC started with the same prerecorded message stating her car warranty was going to expire.

34.     Defendant Matrix has been sued over a dozen times for violating the TCPA,and refuse to curtail their behavior because violating the TCPA benefits Defendant Matrix financially.

35.     On June 22, 2022, Plaintiff received a phone call to her personal cell phone 8219 from Defendants from telephone number (512) 515-6871.

36.     Plaintiff answered and heard a prerecorded voice message stating her car warranty was about to expire and "press one" to speak to a representative.

37.     Plaintiff was annoyed and aggravated for receiving the same phone call with the same prerecorded voice message repeatedly within a week and pressed one to speak to a representative for the sole purpose of identifying the parties responsible for the illegal robocalls.

38.     Plaintiff was connected to a live male telemarketer with an Indian accent who asked Plaintiff qualifying questions about the make and model of her vehicle and solicited Plaintiff for a VSC on behalf of Defendants.

39.     The telemarketer did not provide his name or identify the company he was calling on behalf of.

40.     The telemarketer then advised Plaintiff he was going to transfer her to his manager that would discuss the warranty and benefits of the VSC.

41.     Plaintiff was transferred to a representative from Defendants named Wesley James that stated he was with "activations."

42.     Defendants VAC and Matrix train their agents and telemarketers not to provide their real name until a consumer purchases one of their VSC's in order to hide their true identity.

43.     Wesley confirmed Plaintiff's information and solicited her for a VSC with a "five-year new car coverage" on behalf of Defendants.

44.     Wesley then stated,

"this is the last time we would be able to offer you the coverage and don't accept callbacks at a later time to activate."

45.     Plaintiff did not want or need a VSC but advised Wesley she did for the sole purpose of identifying the companies responsible for the illegal robocalls.

46.     Wesley advised Plaintiff she qualified for new car exclusionary coverage which is valid until July 2028 or 96,000 miles whichever comes first.

47.     Wesley stated he is a "finance manager" and advised Plaintiff she was in luck because he can offer $1,000 discount and solicited Plaintiff for a VSC on behalf of Defendants that would be $100 down payment and only $128/mnth for twenty-four months.

48.     Plaintiff received a VSC in the mail, (contract#TRNEX8010263) that has Defendant VAC listed as the seller and Defendant Matrix as the administrator. *Please see "Exhibit B."*

49.     Upon information and belief Plaintiff has received additional calls within the past two years from or on behalf of Defendants and will be revealed during discovery.

50.     Table below displays calls made to Plaintiff from or on behalf Defendants:

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 06/16/2022 | 9:49 AM | 430-755-3123 | Pre-recorded voice message for auto warranty from Defendants |
| 2 | 06/16/2022 | 11:48 AM | 806-304-3308 | Pre-recorded voice message for auto warranty from Defendants |
| 3 | 06/20/2022 | 12:13 PM | 502-754-1159 | Pre-recorded voice message for auto warranty from Defendants |

8

| 4 | 06/22/2022 | 8:51 AM | 512-515-6871 | Pre-recorded voice message for auto warranty from Defendants. Purchased VSC. |
|---|---|---|---|---|

51.     Defendants VAC and Matrix did not have the Plaintiff's prior express written consent to make any of these robocalls.

52.     Defendant Matrix approve of the contracts with the telemarketers who make illegal robocalls with prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS soliciting VSC's on their behalf.

53.     Defendants initiated numerous unsolicited telephone calls, including robocalls with prerecorded voice messages, made unlawful telemarketing sales pitches regarding extended auto warranty coverage.

54.     Defendant Matrix participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

55.     Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

56.     Defendant Matrix never sent Plaintiff any do-not-call policy.  On July 1, 2022, Plaintiff sent an internal do-not-call policy request to info@matrixwarrantysolutions.com which is listed on their website they own and control https://www.matrixprotection.com.

57.     On information and belief, the Defendants did not have a written do-not-call policy while it was sending Plaintiff the unsolicited robocalls.

58.     On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

59.     It is evidently Defendants' business practice to continue placing sales calls to consumers who have already made DNC requests and who have stated they are not interested in Defendants' services. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

60.     Defendants are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendants registration.

61.     Defendants don't qualify for an exemption under § 302.053.

62.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

63.     Defendant Matrix provide instruction and guidance on who to solicit and the minimum qualifications of potential customers.

64.     Prior to these unsolicited calls, the Plaintiff has never done any business with Defendants and Plaintiff never provided Defendants with her cellular telephone number.

65.     Plaintiff pays for each incoming and outgoing call on her telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

66.     Plaintiff received the calls on her private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered as a cellular telephone number and is used for personal purposes.

67.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of her phone because the phone line was tied up during the telemarketing calls and her privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using her telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT MATRIX

68.     Defendant Matrix is vicariously liable for the telemarketing calls that generated the lead for Defendants.

69.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

70.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

71.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

72.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases

> substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

73.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  *Id.* at 6586 ¶ 34.

74.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

75.     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

76.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

77.     Defendant Matrix is legally responsible for ensuring that the affiliates that make telemarketing calls on its behalf comply with the TCPA when so doing.

78.     Defendant Matrix knowingly and actively accepted business that originated through illegal telemarketing.

79.     Defendant Matrix knew (or reasonably should have known) that its telemarketer was violating the TCPA on its behalf but failed to take effective steps within Matrix's power to force the telemarketer to cease that conduct.

80.     By hiring a company to make calls on its behalf, Defendant Matrix "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

81.     Moreover, Defendant Matrix maintained interim control over the actions of its telemarketers.

82.     For example, Defendant Matrix had absolute control over whether, and under what circumstances, it would accept a customer from its telemarketers.

83.     Furthermore, Defendant Matrix had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS or prerecorded messages to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

84.     Defendant Matrix also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

85.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

86.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

87.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

88.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

89.    Defendant Matrix is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant VAC solicited Plaintiff for a VSC on behalf of Defendants.

## Causes Of Action

### First Cause of Action

(Negligent Violations of the TCPA, "ATDS" Prohibition, 47 U.S.C. § 227(b) et seq.)

90.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

91.    Defendants called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least four (4) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

92.     As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. §
227(b)(1)(A), Plaintiff seeks for herself $500.00 in statutory damages, for each and every
violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

93.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting
such conduct in the future.

<u>**Second Cause of Action**</u>

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227(b) et seq.)

94.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

95.     Defendants called Plaintiff's cellular telephone using an "automatic telephone dialing
system" as defined by the TCPA on at least four (4) occasions in violation of 47 U.S.C. §
227(b)(1)(A)(iii).

96.     Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(b)(3)(B)
by the Defendants by the telephone calls described above.

97.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of
47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for herself treble damages, as provided by statute, up to
$1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3

98.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such
conduct in the future.

<u>**Third Cause of Action**</u>

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

99.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

100.    Defendants called Plaintiff's private residential telephone number which was successfully

registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls,

in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

101.    Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F)

by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

102.    As a result of Defendants' and Defendants' agents' violations of 47 U.S.C. §

227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for herself $500 in statutory damages

for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

103.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

104.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

105.    Defendants called Plaintiff's private residential telephone number which was successfully

registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls,

in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

106.    Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F)

by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

107.    As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for herself treble

damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47

U.S.C. § 227(c)(5).

**Fifth Cause of Action**

(Violations of The Texas Business and Commerce Code 305.053)

108.    Plaintiff incorporates the foregoing allegations as if set forth herein.

109.    The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute

multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-

emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior

express written consent in violation of 47 U.S.C. § 227 et seq. The Defendants violated 47

U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does

not comply with the technical and procedural standards under this subsection.

110.    Plaintiff seeks for herself an award of at least $500.00 in damages for each such

violation. **Texas Business and Commerce Code 305.053(b).**

111.    Plaintiff seeks for herself an award of up to $1,500.00 in damages for each such knowing

or willful violation. **Texas Business and Commerce Code 305.053(c).**

**Sixth Cause of Action**

(Violations of Texas Business and Commerce Code 302.101)
Failure to obtain a Telephone Solicitation Registration Certificate

112.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

113.    Defendants made at least four (4) solicitation sales calls to Plaintiff without having a

valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

17

114.    As a result of Defendants' and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

115.    As a result of Defendants' and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**WHEREFORE, Plaintiff prays for relief against defendant, as follows:**

**Prayer for Relief**

WHEREFORE, Plaintiff Mabel Arredondo prays for judgment against the Defendant, jointly and severally, as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial.

B.  A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law.

C.  An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 4 calls.

D.  An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 4 calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.  An award to Ms. Arredondo of damages, as allowed by law under the TCPA;

H.  An award to Ms. Arredondo of interest and costs, as allowed by law and equity

18

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 8, 2022

*Mabel Arredondo*

Mabel Arredondo
*Plaintiff, Pro Se*
9328 Lait Drive
El Paso, Texas 79925
Phone: (915) 999-8219

19